UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ORLANDO TORAH CENTER, INC.,                     Case No. 6:25-cv-1463

     Plaintiff,

vs.

ORANGE COUNTY, FLORIDA and the
ORANGE COUNTY BOARD OF
COUNTY COMMISSIONERS,

     Defendants.

_____/

## MOTION TO DISMISS

COME NOW, Defendants ORANGE COUNTY, FLORIDA (the "County") and the ORANGE COUNTY BOARD OF COUNTY COMMISSIONERS (the "Board" or "BCC"), and hereby move to dismiss the Complaint filed by Plaintiff ORLANDO TORAH CENTER, INC. ("Orlando Torah").

1.     This case is about Orlando Torah's synagogue that operates out of a property zoned "R-1A" under the County's Land Development Code.  In painstaking detail, the Complaint allegedly documents the synagogue's various needs, zoning restrictions, and services that have grown over time.  Ultimately, the County denied Orlando Torah's request for code variances to allow for expanded uses.  Orlando Torah claims the denial was antisemitically motivated.  Hence this lawsuit.

2.    The Complaint spans 83 pages and includes 11 counts over 490 paragraphs.  Causes of action are brought under the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 1983 (First & Fourteenth Amendment claims), § 1982, the Florida Religious Freedom Restoration Act, the Florida Constitution's Religious Freedom Clause, and for a "Lack of Substantial Competent Evidence to Deny the 2024 Application."

3.    The Complaint's sheer breadth and inclusion of innumerable details violates Rule 8's requirement that a pleader limits their allegations to a "short and plain statement of the claim."  Rule 41 permits dismissal for violations of Rule 8 alone, and Orlando Torah's complaint is a paradigmatic example of when Rule 8 should be enforced due to unnecessary verbosity.

4.    On the merits, we presume without conceding that at least some legitimate claims exist.  We therefore do not seek a stay of discovery or otherwise, but the defense should not be required to respond line-item-by-line-item to a decade of allegations when Plaintiff's claim could be succinctly stated in a fraction of its current magnitude.

5.    However, a handful of issues can be addressed at this phase that are incurable by Plaintiff: (1) the Board cannot be sued as an entity separate from the County; (2) there is no federal jurisdiction to seek appellate review over the Board's administrative action as implicitly demanded in Count XI; and (3) there is no private right of action for damages under the Florida Constitution for the alleged violation of its Free Exercise Clause analog.  Finally, should the Court agree that

the Complaint violates Rule 8 and order repleading, Orlando Torah should be required to identify what specific relief is sought under each cause of action given the various monetary and equitable demands asserted.

6.     The Complaint should therefore be dismissed in part with prejudice and in part without prejudice, and the Board should be dismissed as a party.

## MEMORANDUM OF LAW

### I.     The Complaint should be dismissed for failure to comply with Rule 8.

Rule 8 governs the form of pleadings.  A complaint must contain both a "short and plain statement of the grounds for the court's jurisdiction," FRCP 8(a)(1), and a "short and plain statement of the claim showing that the pleader is entitled to relief," FRCP (8)(a)(2).  In addition to these twin requirements of "short and plain" allegations, "Each allegation must be simple, concise, and direct."  FRCP 8(d)(1).  The failure to comply with Rule 8 subjects a complaint to dismissal pursuant to Rule 41(b), which provides, "If the plaintiff fails to … comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."  *Marshall v. Defendants*, 2008 WL 4155539, *4 (S.D. Ala. Sept. 2, 2008) (recommending dismissal of a complaint under Rule 41 for failure to comply with Rule 8).

To be sure, Rule 8 does not present hollow principles.  "Courts in this Circuit do not tolerate complaints that are verbose, convoluted, or rambling."  *Shaprio v. Unum Life Ins. Co. of Am.*, 2017 WL 10379581, *1 (S.D. Fla. Nov. 29, 2017)

(deeming a 341-paragraph, 7-count complaint an impermissible "behemoth") (citing *Carvel v. Godley*, 404 F. App'x 359, 361 (11th Cir. 2010), and *Gordon v. Green*, 602 F.2d 743, 744–45 (5th Cir. 1979) (itself recognizing that district courts are "on the firing line [as] the first victims of this paper mill")); *see also Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (condemning 58-page complaint as "in no sense the 'short and plain statement of the claim' required by Rule 8" and vacating final judgment with instructions that the district court require repleading), *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295–96 (11th Cir. 2002) (describing 127-paragraph, 9-count complaint as a "quintessential 'shotgun'"), *Hunt v. Caliber Home Loans, Inc.*, 2018 WL 10799004, *2 (S.D. Fla. Mar. 6, 2018) (dismissing third amended complaint with prejudice solely for failure to comply with Rule 8).

Accordingly, this Court has recognized that compliance with Rule 8 is "not a mere technicality." *Al-Rayes v. Willingham*, 2016 WL 6080826, *3–4, n.7 (M.D. Fla. Aug. 15, 2016) (dismissing 66-page, 9-count complaint). Among other problems, "[t]he pleading deficiencies in [such a complaint] make it difficult to address the substantive issues" presented in a motion to dismiss. *Id.* In the oft-quoted decision of *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015), the Eleventh Circuit reached back over a century and restated, "The true rule ought to be this: the statement [of pleading] ought to consider precisely of what has to be proven. It ought not to fall short, or go beyond. If it

goes beyond, it has surplusage matter that is unnecessary." *Id.* at 1316 (quoting Logan Blecky, "Pleading," 3 Ga. Bar Assoc. Report 40, 41-42 (1886)).

We do not contend that Orlando Torah's complaint fits neatly within one of *Weiland*'s four general categories of "shotgun complaints," *see id.* at 1321–23; rather, we contend that it simply fails to comply with Rule 8. Its primary folly is the abundant pleading of evidence rather than ultimate facts. *See, e.g., In re Beef Indus. Antitrust Litig., MDL Doc. No. 248*, 600 F.2d 1148, 1169 (11th Cir. 1979) ("[E]vidence pleading, as distinguished from the pleading of ultimate facts, is not favored under the Federal Rules. ... Many courts have properly stricken unnecessary evidentiary detail from pleadings."); *Zinn v. GMAC Mortg.*, 2006 WL 418437, *3 (N.D. Ga. Feb. 21, 2006) ("The complaint need not, and indeed should not, plead evidence."). The Florida courts, which follow a nearly identical rule that a plaintiff must allege "a short and plain statement of the ultimate facts showing that the pleader is entitled to relief," recognize that allegations "can be made on three levels: (1) a description of the evidence itself, (2) a statement of ultimate facts, or (3) a conclusion of fact or law." *Beckler v. Hoffman*, 550 So. 2d 68, 70 (Fla. 5th DCA 1989) (quoting Fla. R. Civ. P. 1.110). "It is not necessary to allege evidentiary facts (i.e., the exact events described by reference to exact dates, places, persons, involved) but conclusions as here alleged are insufficient." *Id.*; *see also Poirier v. Vills. Sr. Housing I OPCO, LLC*, 395 So. 3d 640, 642 (Fla. 5th DCA 2024) (reciting these principles).

Orlando Torah's complaint spans 82 pages and 490 numbered paragraphs—already far beyond the prolixity of other complaints that have been dismissed under Rule 8 as shown above.  While it is not necessarily "incredibly confusing, making it virtually impossible for this Court to understand which of the hundreds of factual paragraphs relate to which of the plethora of claims raised," *Mason Classical Acad., Inc. v. Arnn*, 2023 WL 6196855, *2 (M.D. Fla. Sept. 22, 2023), its hyperdetailed allegations nonetheless prejudice the defense.  *See In re Beef Indus.*, 600 F.2d at 1168–69 (observing that "unnecessary evidentiary details" may be stricken where they are "prejudicial or of no consequence to the controversy").  After all, Defendants are charged with "stat[ing] in short and plain terms its defenses to each claim asserted against it" and "admit[ting] or deny[ing] the allegations asserted against it by an opposing party."  FRCP 8(b)(1)(A, B).  It is both unreasonable and prejudicial to expect any defendant to investigate literally hundreds of facts at the pleading phase and respond to each in good faith prior to discovery.

For example, § F(4) of Orlando Torah's Complaint, comprising 7 pages and 37 paragraphs, details statements made by non-party citizen objectors at a public hearing.  The title of that section reads, "The BZA Hearing was Dominated by Antisemitic Comments and Tenor and Was Divorced of Land Use Criteria."  (Doc. 1 p. 45.)  Virtually every paragraph under that heading merely provides alleged evidence of that ultimate fact and therefore constitutes unnecessary surplusage.  (*E.g.*, Doc. 1 ¶ 262 ("That [unnamed] neighbor-objector's other comments focused

on issues outside of land use concerns, such as complaints about parents driving their children to and from the Florida State-provided bus that takes them to school or about the driving habits of an individual who was going to OTC.").

Additionally, the complaint cherry picks provisions of the Orange County Land Development Code without either attaching the full code provisions or introducing them into the record via judicial notice. Instead, the complaint's § E traverses 12 pages and 55 paragraphs characterizing the municipal code in its own language that is more akin to a legal argument than a "short and plain statement of the claim." (*E.g.*, Doc. 1 ¶¶ 149, 156 ("[E]ven though a place of worship is presumptively permitted on such property, development can be thwarted upon claims that the use does not meet the impossibly vague and subjective standard that it is not 'similar and compatible with the surrounding area' or that it is 'a detrimental intrusion into a surrounding area.' ... Such standardless discretion is especially problematic when directed at religious applicants, for the use of subjective criteria to evaluate particular religious land uses—and their perceived impact on the surrounding areas—invites arbitrariness and opens the process to bias and covert discrimination.").) This is improper under the Rules.

As a final example, although there are plenty of others, Plaintiff expends 7 pages and 39 paragraphs detailing surrounding traffic patterns and alleged comparator properties. (Doc. 1 ¶¶ 89–128.) All of this could have been rewritten in a "simple, concise, and direct" format to the effect of, say, "Several other properties of similar characteristics, such as schools, churches, and a 7-11, are

treated materially differently by the County in its application of the LDC."[1] Evidence of such allegations are what discovery and summary judgments are made of, not complaints and motions to dismiss.

The Complaint therefore is unwieldly, violates Rule 8, and presents an impossible "behemoth" to reasonably address at the pleadings phase. *See* M.D. Fla. Local R. 3.01(a) (limiting motions to 25 pages). The Complaint should be dismissed without prejudice, and potential substantive challenges to properly repled allegations should be addressed, if necessary, in view of a complaint that complies with Rule 8.

Our remaining arguments are certain to remain applicable to future iterations of the complaint, so they are also addressed here.

## II.    The Board is an improper party-defendant.

Plaintiff has sued two "defendants," Orange County and the Orange County Board of County Commissioners. But the Board is merely a subset of the County itself and cannot be sued individually. It should therefore be dismissed as a party-defendant.

"The capacity of a party to sue or be sued is governed by state law." *Pestana v. Miami-Dade Cty. Bd. of Cty. Comm'rs*, 282 F. Supp. 3d 1284, 1287 (S.D. Fla. 2017). The office of county commissioner is established by the Florida Constitution. *See* Art. VIII, § 6(e), Fla. Const. ("... the governing body of each

---

[1] It should go without saying that the County would deny any such allegation and that this sentence is only provided for illustrative purposes.

county shall be a board of county commissioners ... .").  In turn, the Legislature has enacted Chapter 125 of the Florida Statutes to govern boards of county commissioners.  This includes § 125.15, which provides in full:

> **To sue and be sued in the name of the county.**—The county commissioners shall sue and be sued in the name of the county of which they are commissioners.  A change in the persons composing the board of county commissioners shall not abate the suit, but it shall proceed as if such change had not taken place.

Plaintiff can therefore only maintain suit against the County, and the Board should be dismissed.  *See Pestana*, 282 F. Supp. 3d at 1284 ("[B]ecause it cannot be sued, the Complaint must be dismissed without prejudice as to the Miami-Dade Board of County Commissioners." (citing § 125.15)); *see also Morris v. Escambia County*, 2023 WL 11935538 (N.D. Fla. Jan. 20, 2023) ("[W]hile Plaintiff named the Escambia County Board of County Commissioners as a Defendant, the Board can only be sued in the name of the County.  ... Thus, the clerk will be directed to substitute the  County as a defendant on the docket, and the Plaintiff should name the County as Defendant in all future pleadings."); *Erickson v. Bd. of Cty. Comm'rs of Sarasota Cty.*, 212 So. 2d 340, 340–41 (Fla. 2d DCA 1968) (quoting *Panama Inv. Co. v. Ricker*, 70 So. 596, 598 (Fla. 1916) ("The county commissioners had no authority to bring the suit in their names as such.  [The then-applicable statute] requires the county commissioners to sue in the name of the county of which they are commissioners.")).

The Orange County Board of County Commissioners should therefore be dismissed without prejudice.

### III.   The Court lacks subject matter jurisdiction over Count XI, which seeks appellate review of state administrative action that Plaintiff could have but did not appeal to the state judiciary.

Count XI is styled "Lack of Substantial Competent Evidence to Deny the 2024 Application," but this is merely a request for appellate review in disguise. (Doc. 1 p. 80.)  That is, Plaintiff seeks this Court to determine the sufficiency of the evidence of the BCC's affirmation of the BZA's denial of their 2024 application. The Court lacks jurisdiction to hear the claim.

First, we reiterate that it is Plaintiff's burden to allege a "short and plain" basis for federal jurisdiction, FRCP 8(a)(1), and Count XI contains nothing of the sort.  Instead, Plaintiff alleges that "OTC is entitled to full review of Defendant's administrative action as a matter of right" without explaining what mechanism might afford such "review."  (Doc. 1 ¶ 486.)  Instead, <u>Florida</u> law allows a party aggrieved by final county administrative action to seek review to the appropriate state circuit court, but Plaintiff has apparently not sought such review.  *See Tomeu v. Palm Beach County*, 430 So. 2d 601 (Fla. 4th DCA 1983).

Specifically, Florida Rule of Appellate Procedure 9.030(c) establishes the appellate jurisdiction of the state's circuit courts.  Subsection (c)(1) vests appellate jurisdiction over certain orders rendered by "lower tribunals," such as a board of county commissioners, and subsection (c)(3) creates original jurisdiction for circuit courts to issue extraordinary writs to lower tribunals.

Like here, the plaintiff in *Tomeu* applied for a special exception for a real estate use that was denied by a county administrative body. *Id.* at 602. The Fourth District ultimately explained that a person aggrieved by final local administrative action will have either a right of direct appeal to the circuit court or the availability of certiorari redress to the circuit court. *Id.* But importantly, where the first-tier review lies only in certiorari, the party "must be heard by the circuit court <u>as of right</u>." *Id.* (emphasis added). Thus, Florida's appellate scheme indeed guaranteed Orlando Torah judicial review of the BCC's determination "as of right"; Orlando Torah merely opted not to seek it.

It is otherwise well established that federal district courts lack jurisdiction to sit as appellate courts over state judiciaries. *See Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923), and *D.C. Cir. Ct. App. v. Feldman*, 460 U.S. 462 (1983). "The *Rooker-Feldman* doctrine makes clear that federal district courts cannot review state court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court." *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009). The doctrine prevents "state-court losers" from "complaining of injuries caused by state-court judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

The *Rooker-Feldman* prohibition has been extended to the review of state agency action, even where a federal complaint asserts federal claims for the first time. *See Staley v. Ledbetter*, 837 F.2d 1016 (11th Cir. 1988). In *Staley*, for example, a Georgia agency terminated the plaintiff's parental rights, and her direct

appeals were affirmed. *Id.* at 1017. The plaintiff then filed a 42 U.S.C. § 1983 action, which both the federal district court and Eleventh Circuit dismissed for lack of federal jurisdiction. *Id.* at 1017–18. Our case is procedurally identical with the exception that Orlando Torah voluntarily forewent direct state court review. Certainly, declining to avail oneself of available state appellate remedies—especially where such remedies indeed exist "as of right"—does not vest otherwise unrecognized subject matter jurisdiction in a federal district court. Count XI should therefore be dismissed with prejudice.

## IV. The Florida Constitution does not create a private cause of action for alleged violations of its Free Exercise Clause equivalent.

"Florida's Religion Clauses provide that 'there shall be no law respecting the establishment of religion or prohibiting or penalizing the free exercise thereof.'" *Auguste v. Hyacinthe*, 346 So. 3d 67, 70 (Fla. 4th DCA 2022) (quoting *Napolitano v. St. Joseph Cath. Church*, 308 So. 3d 274, 277 (Fla. 5th DCA 2020) (itself quoting Art. I, § 3, Fla. Const.)). However, Florida does not permit claims for money damages arising out of state constitutional violations absent separate legislative enactment. *See Garcia v. Reyes*, 697 So. 2d 549, 549–50 (Fla. 4th DCA 1997) ("[T]here is no cause of action for money damages against the state, its agencies or employees acting in their official capacities for police misconduct arising directly under the due process clause, article I section 9, of the Florida Constitution."); *Fernez v. Calabrese*, 760 So. 2d 1144, 1146 (Fla. 5th DCA 2000) (SHARP, J., concurring specially) ("Unlike the parallel United States constitutional provisions,

there are no implementing state statutes like 42 U.S.[C]. § 1983 to breath[e] life into the state constitutional provisions."); *Corn v. City of Lauderdale Lakes*, 816 F.2d 1514, 1519 (11th Cir. 1987) ("We further find no support for the availability of money damages, based either on trespass or violation of the right of due process, as guaranteed by the Florida Constitution."); *Ela v. Orange Cty. Sheriff's Office*, 2014 WL 325697 (M.D. Fla. Jan. 29, 2014) (observing that § 1983 does not apply to state laws or constitutions and dismissing Florida constitutional claims).

Indeed, this Court has expressly dismissed a claim for money damages under the Florida Constitution's Free Exercise Clause analog. *Youngblood v. Florida*, 2005 WL 8159645, *6 (M.D. Fla. Mar. 17, 2005) ("The Plaintiffs have cited no similar entitlement to a civil cause of action for compensatory relief under the Florida Constitution [as allowed under § 1983 for federal constitutional claims]. As such, Counts III–VII of the Complaint [including a claim for free exercise of religion], in so far as they purport to rely upon the Florida Constitution as a basis for civil causes of action for monetary relief, will be dismissed."), *aff'd*, 224 F. App'x 909, 913 n.4 (11th Cir. 2007) ("The district court dismissed Plaintiffs' claims under the Florida Constitution to the extent they sought monetary damages because Plaintiffs cited no authority—similar to 42 U.S.C. § 1983 in the federal context—creating a civil cause of action for monetary relief under the Florida Constitution."). Of course, this is not to say that there are no means to enforce Florida's Religious Clauses. For example, the provisions can be invoked as a shield to criminal prosecution. *See*, *e.g.*, *Toca v. State*, 834 So. 2d 204, 208 (Fla. 2d DCA

2002) (finding that state procedural rule requiring litigants to sign pleadings did not violate either federal or state Free Exercise clauses).  And Florida constitutional claims in general may be raised through the state's Declaratory Judgment Act.  *See Depaola v. Town of Davie*, 872 So. 2d 377, 380 (Fla. 4th DCA 2004) (distinguishing *Garcia* and *Fernez* because the plaintiff sought declaratory relief as opposed to monetary relief).

But Orlando Torah's Count X does not ask for declaratory relief, and it expressly alleges that Orlando Torah has been "damaged" allegedly entitling it to "monetary damages."  (Doc. 1 ¶ 79.)  Florida has never recognized such a cause of action, and, as pled, Count X must therefore be dismissed.

## V.    Plaintiff should allege what relief is sought within each count.

Finally, while we have been hesitant to cast the Complaint as an outright "shotgun," Orlando Torah nevertheless lumps all of its sought remedies into a single nine-part "prayer for relief."  (Doc. 1 pp. 80–82); *see Weiland*, 792 F.3d at 1322–23 ("The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief.").  Given that Plaintiff alleges causes of action under RLUIPA, § 1982, § 1983, the Florida Constitution, and FRFRA—and that Plaintiff seeks various non-monetary relief, monetary relief, and attorney fees—Plaintiff should be made to specifically assert what redress they seek under each claim.  Problems associated with Plaintiff's pleading style has perhaps been highlighted in the immediately preceding section discussing the alleged claim under the Florida Constitution.

## VI.    Conclusion.

The Complaint should be dismissed under Rules 8 and 41 with instructions that any amended complaint comply with those directives.  Separately, the Board should be dismissed without prejudice, and Count XI should be dismissed with prejudice.

### **Rule 3.01(g) Good Faith Conference**

I HEREBY CERTIFY that the undersigned has conferred in good faith via telephone concerning all substantive and procedural issues addressed herein and that Plaintiff OBJECTS to all such relief.


Respectfully submitted on this **17th** day of October, 2025, by:


_____
DEREK J. ANGELL, ESQ.
Florida Bar No. 73449
dangell@ohalaw.com
O'CONNOR, HAFTEL & ANGELL, PLLC
800 N Magnolia Ave, Ste 1350
Orlando, Florida 32803
(407) 843-2100
(407) 843-2061 Facsimile
www.ohalaw.com
*Lead Counsel for Defendants*